[No. 22699. *En Banc.* June 22, 1931.]

TONY ROSSI, *Respondent*, v. FRANK SOPHIA, *Appellant*.[1]

*Clay Lawrence,* for appellant.
*Marion Garland,* for respondent.

BEELER, J.—The respondent, on March 18, 1918, acquired by deed from one Stewart and wife a part of the southeast quarter of the northwest quarter of the northwest quarter of section 11, township 23 north, range 1 east, W. M., in Kitsap county, excepting "that portion lying easterly of a line parallel to and ten (10) feet west of the present course of Black Jack creek."

The appellant, on February 11, 1927, acquired from the same grantors that part of the ten-acre tract

excepted from the deed to the respondent, the boundary line being described in identical words.

The appellant, claiming that the boundary line intended by the words of the description was a line ten feet west of the *west bank or margin* of the stream, began the erection of a fence thereon. The respondent, contending that the line intended was a line ten feet west of the *thread of the stream,* brought this action to enjoin the building of the fence and further trespassing upon the strip of land in dispute, and for damages. The decree was for the respondent as prayed, with nominal damages, and this appeal was taken from that decree.

The question to be decided is: What was the line intended to be described by the words "a line parallel to and ten (10) feet west of the present course of Black Jack creek?" Black Jack creek is a shallow, meandering, non-navigable stream, the width of which averages about twenty feet. The trial court held that the boundary line of these adjacent tracts was ten feet west of the *center* line of Black Jack creek, and not ten feet west of the *west bank* of the stream.

No case has been called to our attention, and our search has discovered none, wherein the "course" of a stream, used to indicate the location of a line, has been defined. In *Attorney General v. Hudson River R. R. Co.,* 9 N. J. Eq., 526, 550, it was said by the chancellor that the "course of the river" is a line parallel with its banks, which seems an extraordinary statement, since the two banks of a stream very seldom if ever are parallel, and a line parallel with two other lines not themselves parallel is impossible. But, whatever idea the learned chancellor meant to convey, the case is of no value here, because the phrase "course of the river" was used there to indicate direction, not the location of a boundary line.

But, so far as the meaning of words is concerned, we have no difficulty in concluding that "course of Black Jack creek," as used in the description under consideration, means precisely the same as the phrase "watercourse known as Black Jack creek" would have meant had it been used. "Course" is from the Latin *"cursus,"* a running. "Watercourse" is English for the Latin *"cursus aquae,"* as used by judges and legal writers of an earlier generation. The non-technical meaning of watercourse is "a stream of water; river; brook." The more common legal meaning is the same: "A stream usually flowing in a definite channel, having a bed and banks." Hence, "course of Black Jack creek," intending a line, means simply the stream itself.

Now, if the stream itself had been made the boundary it cannot be doubted that the precise line would have been the thread of the stream. *State ex rel. Davis v. Superior Court,* 84 Wash. 252, 146 Pac. 609; Angell on Watercourses (7th ed.) p. 14, § 10, *et seq.* But, instead of making the stream the boundary, the parties designated "a line parallel to and ten (10) feet west of" the stream, which can only mean a line parallel with and ten feet west of the thread of the stream. Why the parties did this is immaterial, and we do not know and can not inquire, for there is no ambiguity, either patent or latent, in the language employed in their writings.

The appellant complains that he was not permitted to bring into the action as defendants the common grantors of the parties; but, from what has been said, it is obvious that they were neither necessary nor proper parties.

Judgment affirmed.

MILLARD, PARKER, MAIN, and HOLCOMB, JJ., concur.

FULLERTON, J., concurs in the result.

BEALS, J. (dissenting)—I dissent. In Webster's New International Dictionary the word "watercourse" is defined, first, "a stream of water," by which I understand is meant the whole stream from bank to bank, and not simply to or from the center line of the stream. The second definition given is "a natural channel for water," which I understand means from bank to bank as the water flows. Similarly, the same author in considering and defining the word "course" gives several definitions, the one most applicable to a stream, in my opinion, being, "the ground or path traversed; track; way;" that is, the width of the stream from bank to bank, and not simply to or from the center line of the stream.

In *Attorney General v. Hudson River R. Co.,* 9 N. J. Equity 526, at page 550, the chancellor trying the case and writing an opinion which is found in the report, said: "The 'course of the river' is a line parallel with its banks," and, while it is true that the general judgment in that case was reversed on appeal, there was no disturbance by the appellate court of the chancellor's definition of those words. Also, see the phrase "course of the river," 15 C. J. 678, 679. So, in the present case, the deed, in speaking of "a line parallel to and ten feet west of the present course of Black Jack creek," means a line parallel to and ten feet west of the west bank of Black Jack creek.

The common grantor of the parties to this action, in selling a portion of his land to respondent, had the right to offer to sell what portion of his land he pleased, which respondent could purchase or not, as he liked. It seems clear to me that, by the very peculiar wording establishing the westerly boundary of respondent's tract, respondent's grantor intended to reserve to himself the entire bed of Black Jack creek, together with a strip of land to the west of the west

bank of the creek, whether to enable him to build his line fence without being compelled to place any portion thereof in the bed of the stream, or for some other undisclosed purpose. The construction placed by the majority upon the words establishing the boundary line above referred to will result in giving to respondent small portions of the bank and bed of the creek here and there, wherever the creek happens to be over twenty feet in width. Had it been the intention of the respondent and his grantor that respondent should have access to the creek or acquire title to any portion thereof, surely they would have used some words which would have clearly established respondent's rights, and given respondent some certain and definite access to the stream. While authority undoubtedly exists for the construction placed by the majority upon the language which is the subject of this action, it seems to me that the construction placed by the majority upon these words is erroneous, when the situation of respondent and his grantor is considered, and that a construction should be adopted for which equal authority exists, and which will be consistent with the evident intention of the conveyance to respondent. In my opinion, the judgment appealed from should be reversed.

TOLMAN, C. J., and MITCHELL, J., concur with BEALS, J.